**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Greg Peterson

     v.                                     Civil No. 08-cv-189-SM

Michael J. Astrue, Commissioner
Social Security Administration


**REPORT AND RECOMMENDATION**

Before the court is plaintiff Greg Peterson's motion to reverse the decision of the Commissioner to deny his application for Social Security Disability ("SSD") benefits (document no. 7). The Commissioner moves to affirm the denial (document no. 9), contending it is supported by substantial evidence.  Plaintiff's application was filed on November 9, 2006 and denied, both initially and on reconsideration, then reviewed by both an Administrative Law Judge ("ALJ") and the Appeals Council, which affirmed the denial on April 2, 2008.  After that final denial, plaintiff commenced this action seeking further review.  See 42 U.S.C. § 405(g) (Supp. 2008).  The matter was referred to me for a recommendation of disposition.  See 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend the Commissioner's motion to affirm (document no. 9) be granted.

<u>Discussion</u>

**A.  Background**

Pursuant to this court's local rules, <u>see</u> United States District Court for the District of New Hampshire Rule 9.1(d), the parties filed a Joint Statement of Facts (document no. 10) ("JS") which is part of the record and which I have reviewed.  Those facts were taken from the Certified Record ("CR"), which is also part of the file currently before the court.  Only those facts relevant to the disposition of this matter are discussed below, as needed.

**B.  Standard of Review**

An individual seeking social security benefits has a right to judicial review of a decision denying the application.  <u>See</u> 42 U.S.C. § 405(g).  The court is empowered to affirm, modify, reverse or remand the decision of the Commissioner, based upon the pleadings and transcript of the record.  <u>See</u> <u>id.</u>  The factual findings of the Commissioner shall be conclusive, however, so long as they are supported by "substantial evidence" in the record.  <u>See</u> <u>Ortiz v. Sec'y of HHS</u>, 955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" is "'more than a mere scintilla.  It means such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Currier v. Sec'y of HHS, 612 F.2d 594, 597 (1st Cir. 1980).  The Commissioner is responsible for resolving issues of credibility and drawing inferences from the evidence in the record.  See Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981) (reviewing court must defer to the judgment of the Commissioner).  The Court does not need to agree with the Commissioner's decision but only to determine whether it is supported by substantial evidence.  See id.  Finally, the court must uphold a final decision denying benefits unless the decision is based on a legal or factual error.  See Manso–Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

### C.  Claimant's Arguments

Plaintiff bases his claim for benefits on his chronic back pain.  He alleges his disability onset date was October 31, 2006, although he first had surgery for his back problems in August

2002.[1]  Plaintiff is a 54 year old man with a GED who worked for
years as a heating, ventilation and air-conditioning ("HVAC")
mechanic, but stopped that work in October 2006 because of his
back problems.  He claims he cannot work because the pain limits
his ability to bend and prevents him from lifting anything.

Plaintiff contends the ALJ erred at step 5 in the disability
determination process when he concluded plaintiff had the
residual functional capacity ("RFC") to perform a full range of
light work.  See 20 C.F.R. § 404.1520(g)[2].  Plaintiff argues the
ALJ's denial reflects the following errors: (1) not appropriately
weighing the opinion of a nurse practitioner who was treating
him, (2) not finding plaintiff's complaints of pain credible, (3)
assessing an RFC that is not supported by substantial evidence,
and (4) improperly concluding there are a significant number of

---

[1]The record shows that plaintiff has degenerative disc
disease of the lumbar spine and had disc fusion surgery at L5-S1,
but it did not succeed in alleviating his pain.  See CR at 15-16,
152-60.

[2]The parties do not dispute that plaintiff has not engaged
in substantial gainful activity since his alleged onset date and
that he has severe physical impairments that prevent him from
performing his prior work but that do not equal or exceed one of
the impairments listed in the regulations.  See 20 C.F.R. §
404.1520(a) - (d) (listing five step sequential analysis).  The
dispute focuses on what RFC plaintiff retained to perform what,
if any, other work.  See id. §§ 404.1520(e)-(g).

other jobs in the national economy plaintiff could perform despite his limitations.  The first three arguments all challenge the ALJ's assessment of plaintiff's RFC and will be addressed together below, followed by an analysis of his final argument about the ALJ's conclusion at step 5.

    1.  Plaintiff's RFC

Plaintiff contends the ALJ's assessment of his RFC is not supported by substantial evidence because he failed to give proper weight to both his nurse practitioner's ("NP") opinion and his own reports of pain which, had they been weighed properly, would have resulted in a determination that he was unable to perform a full range of light work on a sustained basis.  In particular, plaintiff asserts that the ALJ did not follow Social Security Ruling ("SSR") 06-03p, which sets forth the SSA's policy for "Considering Opinions and Other Evidence from Sources Who Are Not 'Acceptable Medical Sources' in Disability Claims."  See www.ssa.gov/OP_Home/rulings (Aug. 9, 2006).  He also asserts the ALJ did not evaluate his complaints of pain consistent with the requirements of Avery v. Sec'y of HHS, 707 F.2d 19 (1st Cir. 1986).  The record indicates that the ALJ in fact considered plaintiff's symptoms and the extent to which they were consistent

with the objective medical evidence and opinion evidence, in accordance with the governing regulations and rulings.  After carefully reviewing the record, I am not persuaded by plaintiff's arguments and find the ALJ's assessment of plaintiff's RFC is supported by substantial evidence.

        **a.  SSR 06-03p**

The regulations require plaintiff to establish his alleged disabling impairment with evidence from "acceptable medical sources,"  <u>see</u> 20 C.F.R. § 404.1513(a) (listing acceptable medical sources that can establish medically determinable impairments), and allow him to use evidence from "other sources" to show the impairment's severity and its impact on his ability to work.  <u>See</u> <u>id.</u> § 404.1513(d) (listing other medical and non-medical sources of evidence).  To carry his burden of proof, plaintiff relied on the opinion of Victoria Blight, a nurse practitioner who was his primary treatment provider from April 2005 through August 2007 but who is not an "acceptable medical source" for purposes of establishing his impairment.  <u>See</u> <u>id.</u> To overcome this evidentiary hurdle, plaintiff invoked SSR 06-03p, which recognizes that the treatment notes and opinions of non-physician medical care providers, such as nurse

6

practitioners, "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-03p. These opinions provide context in which to weigh the opinions of "acceptable medical sources," to assess what is contradicted and what is supported by all the evidence in the record. See id.[3]

SSR 06-03p provides that the weight to be given "other sources" of evidence varies depending on the facts of a case, including, among other factors, the source of the opinion, the source's qualifications, and the issue(s) that the opinion is about. See id. The same factors that determine how much weight should be given an "acceptable medical source" opinion apply to evaluate the weight to be given an "other source" opinion, like

---

[3]SSR 06-03p provides in relevant part: "The term 'medical sources' refers to both 'acceptable medical sources' and other health care providers who are not 'acceptable medical sources.' See 20 C.F.R. 404.1502 & 416.902.. . .  The distinction between 'acceptable medical sources' and other health care providers who are not 'acceptable medical sources' is necessary for three reasons.  First, we need evidence from 'acceptable medical sources' to establish the existence of a medically determinable impairment.  See 20 C.F.R. 404.1513(a) & 416.913(a).  Second, only 'acceptable medical sources' can give us medical opinions. See 20 C.F.R. 404.1527(a)(2) & 416.927(a)(2).  Third, only 'acceptable medical sources' can be considered treating sources, as defined in 20 C.F.R. 404.1502 & 416.902, whose medical opinions may be entitled to controlling weight.  See 20 C.F.R. 404.1527(d) and 416.927(d)."

the opinion of NP Blight at issue here:

> – length and frequency of treatment;
> – consistency with other evidence;
> – relevant evidence to support the opinion;
> – how well the opinion is explained;
> – whether the source has a specialty or
>     area of expertise related to the
>     claimant's impairment; and
> – any other factors that tend to support
>     or refute the opinion.

In some circumstances, the "other" medical source's opinion may be given more weight if the provider has seen the claimant more frequently than the "acceptable" medical source, has provided better supporting evidence, and has better explained the opinion. See id. Finally, SSR 06-03p provides that the adjudicator should explain the weight given to the opinion of these "other sources" in assessing disability, to ensure that the decision reveals the adjudicator's reasoning.

The record demonstrates that, contrary to plaintiff's assertion in support of his motion to reverse, the ALJ followed the policy guidelines of SSR 06-03p in evaluating the weight to be given NP Blight's opinion. The ALJ described NP Blight's opinion as follows:

> ARNP Blight did add additional limitations
> in a Medical Source Statement completed [in
> September 2007], but this source is not an
> acceptable medical source. Moreover, her

> assertion that the claimant was unable
> to sit for more than 30 minutes as well
> as her description of the claimant's
> limitations with regard to stand[ing] and
> walking are not supported by any findings
> by a treating or examining physician.
> The undersigned affords little weight to
> the opinion of ARNP Blight and significant
> weight to the opinion of Dr. Claussen in
> forming the conclusions set forth above.

CR at 20; see also CR at 17 (summarizing NP Blight's findings).

This explanation shows that the ALJ did consider NP Blight's

opinion, in light of the entire record, to determine what insight

it provided about the severity of plaintiff's alleged disability

and its impact on his ability to function.  The ALJ found that

her opinion was not supported by "*any* findings of a treating or

examining physician" (emphasis added).

The ALJ's conclusion that NP Blight's opinion is not

consistent with any treating or examining physician is supported

by the record.  Although Dr. Claussen agreed with NP Blight with

respect to the limited weight plaintiff could carry, see CR at

363, Dr. Claussen gave no opinion about the limitation on sitting

and standing or on operating foot and hand controls and, instead,

simply opined that plaintiff could not perform his prior work as

an HVAC technician because of the physical demands of the job.

See id.  That point is undisputed.  Drs. Hockman and O'Connell

both treated plaintiff for the pain caused by his back problems[4],
and, like Dr. Claussen, concluded he could not continue to work
as he had in the past but gave no opinion about other limits on
his functionality that would support NP Blight's assessment in
September 2007.  See CR at 203-07, 216, 363.  In February 2007,
Dr. Hockman noted that plaintiff was "ready to retire," but
advised him that he needed an RFC "in order to be able to tell
exactly what he was capable of doing and not."  CR at 304.  As
treating physicians, these doctors' opinions were weighed most
heavily.  See 20 C.F.R. § 1527(d)(2).[5]

     Similarly, Drs. Dion and Masewic both evaluated plaintiff as
part of his application for disability benefits and found he
could not return to his former work, but either provided no

---

     [4]In fact NP Blight referred plaintiff to these doctors for
their specialized care.  See CR at 134, 216 & 203.

     [5]Plaintiff argues a long-term disability claim form filled
out in January 2007 jointly by NP Blight and Dr. Claussen is
evidence that supports NP Blight's September 2007 RFC assessment.
That claim form states that plaintiff was permanently disabled
from continuing his former work and also states that he was not a
candidate for rehabilitation.  See CR at 342.  Plaintiff argues
that means he could not be rehabilitated to another occupation;
however, the form does not make that connection either directly
or even indirectly, but rather gives rise to the inference that
he was not a candidate for rehabilitation to his former work.  In
fact, the doctors wrote that it was "unknown" whether plaintiff
was or would continue to be unable to work at another occupation.
See id.

opinion on his functionality or assessed it much greater than NP Blight had.  See CR at 117-24, 372-75.  These opinions, as non-treating physicians, provide further evidence in support of the ALJ's conclusion.  See Gordils v. Sec' of Health & Human Svcs, 921 F.2d 327, 329 (1st Cir. 1990) (combining the opinions of consulting doctors to find substantial evidence).  Finally, the notes from these treating and examining physicians all indicate that, despite plaintiff's persistent and significant back pain, he remained neurologically intact, with a steady gait and normal motor and sensory function.  See CR at 205 (Dr. O'Connell), 216 (Dr. Hockman) 363 (Dr. Claussen), 373 (Dr. Dion) & 376 (Dr. Hu).[6] This objective medical evidence simply does not support NP Blight's opinion about plaintiff's limited ability to sit, stand, or use his hands and feet, see CR at 366-67, and the ALJ followed SSR 06-03p when he chose to discount her opinion accordingly.

The record further supports the ALJ's decision not to weigh

_____

[6]Between plaintiff's August 2002 back surgery and his October 31, 2006 alleged onset date, plaintiff was seen by at least three different doctors, at the Veteran's Administration and the Pain Management Center, all of whom determined that he had no sensory abnormalities in the lower extremities, no motor deficits and intact reflexes.  See JS at 4-6.  While this evidence predates plaintiff's alleged onset date, the consistency of the diagnosis substantiates the ALJ's determination that NP Blight's opinion should not be accorded much weight because it was not supported by other evidence in the record.

NP Blight's opinion heavily because it did not meet several of the criteria outlined in SSR 06-03p that justify giving the opinion greater weight.  Specifically, NP Blight was not a specialist and did not have an area of expertise in back pain, but instead is a nurse practitioner in a family medicine general practice group, and her treatment notes and referral letters reflect her general primary care.  See CR at 245-348 (treating plaintiff for a variety of medical problems, including colon polyps, gallstones, cataracts, pain management, alcohol abuse and cardiac care).  Her opinion of September 2007 is neither well explained nor well supported by other relevant evidence.  She simply filled out a form "Medical Source Statement of Ability to do Work-Related Activities (Physical)."  CR at 365.  There are no notes, x-rays, laboratory results or test results that substantiate her findings.  Since NP Blight's opinion was not consistent with other opinions in the record, nor was it well explained or supported with other objective medical evidence, the ALJ appropriately discounted her opinion.  His assessment of the evidence must control when, as is the case here, there is nothing in the record that demonstrates a legal or factual error.  See Manso-Pizarro, 76 F.3d at 16.

12

### b.  Credibility Assessment

Plaintiff next challenges the ALJ's finding that his
complaints of pain were not credible.  He argues the ALJ ignored
certain evidence and failed to consider other evidence, and erred
when he evaluated plaintiff's complaints according to the factors
set forth in Avery v. Sec'y of HHS, 707 F.2d 19 (1st Cir. 1986),
and in the regulations, citing 20 C.F.R. § 404.1529(c)(3) and SSR
96-7p.  Although the record contains multiple notes regarding
plaintiff's pain associated with his lower back, the Commissioner
is responsible for resolving issues of credibility, and deference
is accorded those determinations unless they are not supported by
substantial evidence.  See Rodriguez, 647 F.2d at 222; see also
Ortiz v. Sec'y of HHS, 890 F.2d 520, 523 (1st Cir. 1989)
(deferring to the ALJ's assessment of subjective complaints of
pain); Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir.
1987) (deferring to the ALJ who heard the testimony and observed
the claimant).  My review of the record leads to the conclusion
that the ALJ's findings are supported by substantial evidence.

The evidence shows that because plaintiff's impairment did
not meet or equal the listing criteria for a spine disorder
disability, his RFC needed to be assessed to determine the

13

effects of his impairment and any additional limitations imposed
by pain on his capacity to perform either his former work or
other work.  See Avery, 797 F.2d at 28.  Plaintiff asserts that
his subjective feeling of pain is greater than the objective
medical findings of his limitations.  In such circumstances,
several factors need to be considered to assess the pain and its
allegedly disabling severity.  See id.  The ALJ is required to
consider the claimant's work history and obtain information
about:  the nature, location, onset, duration, frequency,
radiation and intensity of any pain; precipitating and
aggravating factors, such as movement, activity and environmental
conditions; type, dosage, effectiveness and adverse side-effects
of any pain medication; treatment, other than medication, for the
pain; functional restrictions; and the claimant's daily
activities.  See id. at 29; see also Mandziej v. Chater, 944
F.Supp. 121, 133 (D.N.H. 1996); 20 C.F.R. §§ §404.1529(c)(3).
"In evaluating a claimant's subjective complaints of pain, the
adjudicator must give full consideration to all of the available
evidence, medical and other, that reflects on the impairment and
any attendant limitations of function."  Avery, 797 F.2d at 29.

        The ALJ's decision demonstrates that he followed the Avery

14

guidelines and the regulations in evaluating plaintiff's alleged disabling pain.  The ALJ considered all of plaintiff's symptoms and the extent to which they were consistent with the objective medical evidence, other evidence, and the opinion evidence, based on the requirements of 20 C.F.R. §§ 404.1529 & 404.1527 and SSRs 96-2p, 96-4p, 96-5p, 96-6p, 96-7p and 06-3p.  <u>See</u> CR at 18.  He specifically noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record."  CR at 18. To that end, the ALJ evaluated plaintiff's prior work record, his activities of daily life ("ADL"), the location, duration, frequency and intensity of his pain, factors that precipitate or aggravate the symptoms, what medications plaintiff was taking to alleviate the pain, what treatment other than medication plaintiff had received to reduce the pain, any non-treatment measures plaintiff had pursued to relieve his pain, and finally any other factors concerning his functional limitations and restrictions due his pain and other symptoms.  <u>See</u> CR at 19.

The ALJ concluded that plaintiff's "statements about the

intensity, persistence and limiting effects of the symptoms

[were] not entirely credible." Id. As the ALJ explained:

> (i) he has been consistently found to have
> normal motor and sensory function as well
> as a steady gait; (ii) he did not follow Dr.
> Hockman's February 2007 recommendation to
> obtain an RFC assessment to determine what
> other work he could do; (iii) he reported
> to Dr. Claussen that he could lift as much
> as 40 pounds, though she determined he should
> not lift more than 20 pounds; (iv) his credibility
> was undermined by his continued abuse of alcohol
> and his statements to Dr. Robinson that he was
> looking for ways to obtain [SSDI] benefits, to
> Dr. Hockman that he was ready to retire, and to
> Dr. Gustavson that he had been advised he would
> end up in a wheelchair, although no evidence in
> the record supported that statement; and (v) his
> credibility was further undermined by the
> discrepancies between his reported ADL, his
> testimony and his statements to Dr. Claussen.

See CR at 19–20. Because plaintiff did not suffer from any

neurologically identifiable problems, the alleged severity of his

pain was questionable. See 20 C.F.R. Appendix 1, Listing 1.04;

see also CR at 17–18.[7] The ALJ noted that plaintiff had declined

---

[7]The ALJ found that the medical evidence established that
plaintiff has a severe impairment resulting from his low back
pain status following his lumbar surgery in August 2002 which
affected his ability to perform basic work functions such as
lifting and carrying, but that the impairment did not satisfy the
criteria for a spine disorder set forth in Appendix 1, Listing
1.04, because plaintiff was consistently noted to have normal
sensory and reflex function, was fully weight bearing, and MRI
testing in October 2007 showed no significant stenosis and no
evidence of disc herniation. See CR at 17–18.

to follow the various doctors' recommendations, such as obtaining an RFC assessment and controlling his alcohol abuse, which was consistently identified throughout the record as being a major impediment to the effectiveness of prescription pain medication. Finally, the ALJ was not convinced by the alleged severity of plaintiff's pain when he continued to engage in many ADLs with no assistance and yet evinced minimal desire to help himself, by either pursuing vocational education or managing his alcohol intake.  All of these findings are supported by the record.

None of plaintiff's arguments demonstrates that critical evidence was overlooked or not considered by the ALJ.  Though plaintiff points to his long record of working as proof of his good work ethic, it was undisputed he could not return to his former work and yet the record contains no evidence that he had done anything to find other work.  See e.g. CR at 125–38 (plaintiff's 2007 SSI Disability self-report in which he asks the SSA to find him another job and admits to not having participated in any job programs), 216 (Dr. Hockman's August 2006 advice that plaintiff "become active about his pain" and "change the way he does his job" to see if that helps), 291–92, 301 & 342 (NP Blight and Dr. Claussen's opinions in October 2006 and January 2007 that

17

plaintiff could not continue his HVAC work but it was "unknown" whether he could do other jobs), 304 (Dr. Hockman's February 2007 recommendation that plaintiff get an RFC to determine what he was capable of doing after quitting his HVAC work which plaintiff did not do), 359 (plaintiff's July 2007 letter seeking long term disability coverage because he could not return to his former work).  This record suggests plaintiff was not very committed to pursuing a new career that accommodated his physical limitations. The ALJ reasonably could have perceived that this attitude, more than his alleged pain, impeded his efforts to find other work.

Plaintiff next argues his ADLs bolster his credibility that his pain level precludes him from engaging in substantial gainful activity.  Plaintiff, however, has not identified any activities or limitations that the ALJ misunderstood or overlooked.  To the contrary, the ALJ listed many of the same limited activities that plaintiff reported in December 2006 and testified to at the hearing.  Cf. CR at 19 & 101–08.  By plaintiff's own admission, though his back problems precluded him from doing strenuous physical labor, they did not prevent him from caring for himself independently, doing light housework and simple cooking, walking and driving a car alone, shopping, socializing, and managing his

financial affairs.  See id.  Also, though plaintiff was limited

in his ability to do a variety of physical movements that would

have been required to continue performing strenuous manual labor,

like bending, squatting and lifting, he described himself as able

to  always follow both oral and written instructions, constantly

pay attention, and handle both stress and changes in routine

fine.  See CR at 106–07.  While plaintiff's back problems and

associated pain required him to change jobs, this evidence of his

ADLs does not support his claim that his pain was so intense and

severe that he could not engage in other work.[8]  Cf. Allred v.

Heckler, 729 F.2d 529, 532–33 (8th Cir. 1984) (objective medical

evidence and consistent medical opinions found plaintiff "totally

disabled from any physical activities").  The ALJ's finding that

plaintiff's complaints were not entirely credible based on his

ADLs is substantiated by the record.

_____

[8]Plaintiff argues he is not required to show total
incapacity to be determined unable to engage in substantial
gainful activity.  While this proposition correctly states the
law, the cases cited in support of his argument for reversal are
not persuasive because the facts are distinguishable.  See
Hatfield v. Apfel, No. CIV. A. 94–1295–JTM, 1998 WL 160995, *7
(D.Kan. Mar. 3, 1998) (erroneous assessment of pain where ADLs
did not indicate how much plaintiff could sit or stand during the
day, which activities were required in her past relevant work);
see also Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996)
(reversing ALJ because inconsistencies relied on to discount
plaintiff's credibility were not supported by the record).

Plaintiff also asserts the ALJ failed to fully consider the location, duration, frequency and intensity of his pain and its precipitating and aggravating factors, as Avery requires.  He contends the ALJ only superficially reviewed the record of his pain symptoms because he had been consistently found to have normal motor and sensory functioning and a steady gait.  In fact, the ALJ discussed plaintiff's entire history of back problems, beginning with the original injury sustained while serving in the military through Dr. Dion's October 2007 pain consultation, and specifically recognized the limitations his back pain caused.  See CR at 16-17.  The undisputed record demonstrates that plaintiff suffered a severe impairment to his lower back which has caused persistent pain for many years.  The ALJ recognized this established pattern, and it is well-supported by the entire medical record.  The record is replete, however, with notes that plaintiff's alcohol abuse has prevented him from effectively treating his pain with prescription medication.  See e.g. CR at 152 (Dr. Ahn in August 2002), 178 (Dr. Sievers in November 2003), 264 (Dr. O'Connell in December 2005), 247, 250, 280 (NP Blight on several occasions), 272 (Dr. Campbell in February 2006), 219 (Dr. Gustavson in February 2007), 307 (Dr. Mattin in February 2007) &

372 (Dr. Dion in October 2007).  As nearly every medical care provider who evaluated or treated plaintiff told him he needed to reduce his alcohol intake to better manage his pain, the ALJ reasonably could have concluded that plaintiff was sabotaging the efforts at pain management with his alcohol abuse and was free to discount his reported pain accordingly.  See 20 C.F.R. § 404.1530 (requiring claimant to follow prescribed treatment and finding no disability if not followed "without a good reason").

Plaintiff next challenges the ALJ's credibility analysis by contending he neglected to account for the ineffectiveness of the numerous treatments plaintiff had pursued, including medication, physical therapy, prescription drug and botox injections, and several non-medical treatments such as heating pads, stretching, massages and avoiding pain triggers.  Plaintiff correctly argues the record demonstrates how little success these various methods provided in alleviating his pain.  See CR at 291 & 373 (summaries of his treatment history).  Yet the record also demonstrates that after he stopped working as an HVAC technician, his pain lessened.  See CR at 301.  In October 2007, Dr. Dion opined that pain management treatment should decrease plaintiff's overall disability, and he identified the first goal of treatment as

being to "improve overall functionality and quality of life with use of medications, physical therapy, lifestyle modifications with decreased alcohol intake and smoking cessation."  CR at 375. The ALJ is required to weigh the evidence, and nothing in the record undermines the conclusion that because plaintiff's pain symptoms had reduced after he stopped working as an HVAC technician, they could continue to improve so long as he avoided similar manual labor that aggravated his condition, stopped abusing alcohol, and followed the treatment directives of his medical care providers.

While the record contains evidence which shows plaintiff in fact endured back pain, it also substantiates the ALJ's finding that plaintiff was not entirely credible in his reports about the severity of that pain.  In making factual findings, the ALJ must weigh the evidence and evaluate credibility, to which the court must defer unless those decisions are not supported by the record.  See Frustaglia, 820 F.2d at 195; see also 20 C.F.R. § 1529(c) (explaining how symptoms of pain are evaluated).  Since I must defer to the credibility determinations drawn by the ALJ as long as they are not inconsistent with the weight of the evidence, plaintiff's reported pain must be accepted as not

entirely credible, and the ALJ's decision to that effect is

conclusive.  See Ortiz, 955 F.2d at 769.

### c.  RFC Determination

The ALJ found that although plaintiff was unable to perform

any past relevant work, see 20 C.F.R. § 1565, he retained the RFC

to perform a full range of light work.  See CR at 20.  Plaintiff

contends he is unable to perform the full range of light work on

a sustained basis, as evidenced by NP Blight's assessment and his

symptoms of pain.  As discussed supra, the ALJ's decision to

discount both NP Blight's assessment and his symptoms of pain is

supported by the record and, therefore, controls.  Since the

record supports the ALJ's decisions about NP Blight's opinion and

plaintiff's credibility, the ALJ's RFC assessment readily

follows.

Plaintiff argues this RFC is not supported by substantial

evidence in light of the factors set forth in SSR 96-8p.  SSR 96-

8p interprets the SSA's policy on how to determine a claimant's

RFC initially, and provides in relevant part:

> Ordinarily, RFC is an assessment of an
> individual's ability to do sustained work-
> related physical and mental activities in
> a work setting on a regular and continuing
> basis.  A "regular and continuing basis"
> means 8 hours a day, for 5 days a week, or

an equivalent work schedule.. . .

The RFC assessment must first identify the
individual's functional limitations or
restrictions and assess his other work-
related abilities on a function-by-function
basis, including the functions in paragraphs
(b), (c), and (d) of 20 C.F.R. § 404.1545 and
416.945.  Only after that may RFC be expressed
in terms of the extertional levels of work,
sedentary, light, medium, heavy and very heavy.. . .

Ordinarily, RFC is the individual's *maximum*
remaining ability to do sustained work activities
in an ordinary work setting on a **regular and
continuing** basis, and the RFC assessment must
include a discussion of the individual's
abilities on that basis.

The Act requires that an individual's inability
to work must result from the individual's physical
or mental impairment(s).  Therefore, in assessing
RFC, the adjudicator must consider only limitations
and restrictions attributable to medically determinable
impairments.  **It is incorrect to find that an
individual has limitations or restrictions beyond
those caused by his or her medical impairment(s)
including any related symptoms, such as pain, due
to factors such as age or height, or whether the
individual had ever engaged in certain activities
in his or her past relevant work (e.g. lifting heavy
weights)**.  Age and body habitus . . . are not factors
in assessing RFC initial claims.

SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996) (emphasis in

original).  The ruling sets forth the exertional and non-

exertional factors to be considered, that include both physical

and mental capabilities.  See id.

24

Once again the record supports the ALJ's findings.  As
discussed at length above, the ALJ reviewed the evidence
concerning plaintiff's medical history, including laboratory
findings and other objective medical evidence, the effects of
treatment, the various medical source statements, plaintiff's
ADLs, his reports of pain and his attempts to work.  <u>See</u> CR at
18-20; <u>see</u> <u>also</u> SSR 96-8p (listing evidence to be considered in
assessing RFC)[9]; 20 C.F.R. § 404.1545(a) (setting forth how RFC
is determined).  The ALJ specifically addressed plaintiff's
medically determinable mental impairment of alcohol abuse,
discussed the relevant functional areas, and concluded it was
only a nonsevere impairment.  <u>See</u> CR at 17-18.  That decision is
directly supported by the opinions of Drs. Gustavson and Martin.
<u>See</u> CR at 217-39.  He then proceeded through the analysis of
plaintiff's medically determinable severe physical impairment,
and also addressed how his back problem affected his functioning.
<u>See</u> <u>id.</u> at 19-20.  While the ALJ did not explicitly address each
functional limitation on his physical and mental abilities listed
in the regulations, <u>see</u> 20 C.F.R. § 404.1545(b) & (c) and SSR 96-

---

[9]Other evidence that could be considered but was not part of
the record here includes lay evidence, recorded observations,
need for a structured living environment, and work evaluations.
<u>See</u> SSR 96-8p.

8p, the record contained RFC assessments done by plaintiff, Dr.
Masewic and Dr. Martin which support the ALJ's conclusion that
plaintiff retained the ability to perform light duty work.[10]
Only NP Blight opined that plaintiff had greater limitations on
his ability to sit, stand, reach and pull, yet her assessment of
plaintiff's most significant restriction -- that he was limited
to lifting and carrying only 10 pounds frequently and 20 pounds
occasionally and never greater than that -- is actually
consistent with the findings of the other medical evaluators.

Accordingly, the ALJ did not err when he found, based on the
evidence before him, that plaintiff retained the RFC to do light
duty work.  Light duty work is defined as involving lifting no
more than 20 pounds at a time, with frequent lifting or carrying
only 10 pounds, and includes sedentary work unless there are

_____

[10]The regulations require the ALJ to assess a claimant's
physical function by looking at the ability to sit, stand, walk,
lift, carry, push, pull or other manipulative or postural
functions, like reaching, handling, stooping or crouching, and
mental function by considering the ability to understand,
remember and carry out instructions, and to respond appropriately
to supervision, co-workers and work pressures in a work setting.
See 20 C.F.R. § 404.1545(b) & (c).  The record contains evidence
of plaintiff's ability to perform these various functions.  See
CR at 101-09 (plaintiff's self-report), 117-24 (Dr. Masewic's
physical RFC assessment), 217-21 (Dr. Gustavson's mental
disability evaluation), 222-38 (Dr. Martin's mental RFC
assessment) and 365-70 (NP Blight's RFC assessment).

other limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  See 20 C.F.R. § 404.1567(b).  The evidence consistently showed that although plaintiff could not continue to do any type of heavy manual labor, he remains cognitively sharp, able to conduct himself appropriately in a work-like environment, with some exertional limitations, only minimal postural limitations, and no manipulative, visual or communicative limitations.  See CR at 118-21, 219, 238.  Plaintiff has not identified anything in the record that undermines the ALJ's conclusion or otherwise suggests that plaintiff could not sustain a light duty job for a regular work week.  There is substantial evidence in the record that plaintiff retained the RFC to perform the full range of light work.

### 2.  Step 5 Analysis

With substantial evidence supporting the ALJ's findings about plaintiff's RFC, the step 5 analysis is straight forward. See 20 C.F.R. § 1520(g) (considering RFC together with claimant's age, education and work experience to determine if an adjustment to other work may be made).  In order to support a finding that plaintiff is not disabled at step 5, the SSA was "responsible for

providing evidence that demonstrates that other work exists in significant numbers in the national economy that plaintiff can do, given [his RFC] and vocational factors." Id., § 404.1560(c). The ALJ properly combined plaintiff's RFC to perform the full range of light duty work with the vocational factors of his "closely approaching advanced age," his high school education and ability to communicate in English to assess whether plaintiff was disabled. See CR at 20-21. When, as is the case here, plaintiff is not engaged in substantial gainful activity and had a severe medically determinable impairment that prevented him from doing his past relevant work, the regulations direct the ALJ to Appendix 2, which provides rules to determine disability based on functional and vocational patterns of jobs in the national economy. See 20 C.F.R. § 404.1569 (explaining how Appendix 2 is used to determine whether jobs are available given a particular functional and vocational profile).

The rules in Appendix 2 dictate the result here. See id. ("if the findings of fact made about all factors are the same as the rule, we use that rule to decide whether a person is disabled"). Table 2 sets forth the rules that govern when a claimant has an RFC, like plaintiff, limited to light work as a

result of a severe medically determinable impairment.  <u>See</u> 20
C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2.  Plaintiff was
"closely approaching advanced age" at the alleged onset date of
his disability, <u>see</u> 20 C.F.R. § 404.1563(d), with a GED and the
ability to speak in English, <u>see</u> <u>id.</u> § 404.1564(b)(4) & (5).
Those factors placed plaintiff within Rules 202.13-15 of Appendix
2, which rules vary depending on whether a claimant's previous
work experience render the claimant unskilled or skilled and, if
skilled, whether those skills are transferrable.  Under each rule
a claimant is considered not disabled, regardless of his skill
level.  <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2,
Rules 202.13, 202.14 & 202.15.

     The ALJ correctly concluded that "transferability of job
skills [was] not material to the determination of disability
because applying the Medical-Vocational Rules directly supports a
finding of 'not disabled,' whether or not the claimant has
transferable job skills."  CR at 20; <u>see</u> <u>also</u> <u>id.</u>  Because the
ALJ also found that plaintiff was only able to perform light duty
work, the skills he acquired as an HVAC technician presumably
would not have been transferrable and also, therefore, would not
have been relevant to a determination of what jobs existed in the

29

national economy given his functional and vocational profile. <u>See</u> 20 C.F.R. § 404.1565 ("if you cannot use your skills [from your work experience] in other skilled or semi-skilled work, we will consider your work background the same as unskilled"). Under these circumstances, where plaintiff did not have transferrable skills, the ALJ properly applied Rule 202.14, which applies to claimants with non-transferrable skills and requires a determination of "not disabled." <u>See</u> CR at 21 (citing Medical-Vocational Rule 202.14).

Plaintiff argues the ALJ's decision is not supported by substantial evidence because he did not have the RFC to perform the full range of light work and, therefore, the ALJ erroneously relied on Rule 202.14 to find he was not disabled. As discussed at length above, the ALJ's assessment of plaintiff's RFC is supported by substantial evidence and, as a result, that finding must be accepted. <u>See</u> <u>Rodriguez</u>, 647 F.2d at 222 (requiring the court only to determine whether the ALJ's decision is supported by substantial evidence, not to agree with it). Given plaintiff's RFC and his other vocational factors, Rule 202.14 governs, and the ALJ's decision that plaintiff is not disabled must be upheld. <u>See</u> <u>Ortiz</u>, 955 F.2d at 769 (ALJ's factual

findings are conclusive if supported by substantial evidence);
<u>see also</u> <u>Manso-Pizarro</u>, 76 F.3d at 16 (upholding ALJ's denial of
benefits absent legal or factual error).

Conclusion

For the reasons set forth above, I recommend that
plaintiff's Motion to Reverse (document no. 7) be denied and
defendant's Motion to Affirm (document no. 9) be granted.

Any objections to this report and recommendation must be
filed within ten (10) days of receipt of this notice.  Failure to
file objections within the specified time waives the right to
appeal the district court's order.  <u>See</u> <u>Unauthorized Practice of</u>
<u>Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992);
<u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).


_____
James R. Muirhead
United States Magistrate Judge


Date:  June 12, 2009

cc:  Raymond J. Kelly, Esq.
     T. David Plourde, Esq.